Jasen, J.
(dissenting). I vote to reverse. By repeatedly rejecting, without good cause, the services of the only attorney to which he was constitutionally entitled, defendant waived his right to counsel. On this point, I am in complete agreement with the views expressed in the dis *23 senting opinion of Justice Richard D. Simons at the Appellate Division. (83 AD2d 205, 210-216.) I find it necessary, however, to comment briefly on the rationale employed by the majority in needlessly sustaining the reversal of defendant’s conviction for the brutal murder of a teen-age girl.
At the outset, certain facts should be noted. It is not contended that Bruce Carpenter, the Chief Assistant Public Defender assigned to represent the defendant, is other than an experienced, qualified and highly respected trial attorney. At no time in the course of these proceedings has defendant offered a valid reason for not accepting his services as counsel. Indeed, the record suggests that defendant’s refusal to accept Carpenter as his attorney was more the product of appellate counsel’s dissatisfaction with the political turnover in the Public Defender’s office than any real concern over defendant’s constitutional right to full and fair representation at trial.
Be that as it may, defendant at the time of trial was 31 years old and by no means unfamiliar with the criminal justice system. Not only had he served time on prior felony charges, but he was involved in a lengthy extradition proceeding in the State of Maine which ended in his return to this State to face the present murder charges. On both these occasions, defendant was represented by counsel and, as a result, fully exposed to the role played by an attorney in the course of a criminal proceeding.
Although defendant was indigent, there is no indication that he was ignorant or that he lacked a basic understanding of the English language. In fact, the record is directly to the contrary. On each of the several occasions that he was confronted with the choice of either accepting Carpenter or proceeding pro se, defendant, while adamantly refusing the Public Defender’s assistance, continuously professed an inability to represent himself. Such self-proclaimed incompetence is some indication that he was aware of and appreciated the dangers involved in not being represented by a lawyer at trial. Furthermore, the court specifically advised defendant of the seriousness of the charges he was facing and the term of life imprisonment *24 that could follow upon conviction. In addition, defendant, in the course of his opening statement, expressly acknowledged that “[t]he law is very complex”, that “[a] man has to go through many years of schooling before he can become a lawyer” and asked the court how it expected him “to do this in a few months”.
Beyond this, the clearest indication of defendant’s subjective appreciation of the risks involved in pro se representation came from his own mouth. At one point in the pretrial proceedings, the defendant addressed the court as follows: “I’m not familiar with the proceedings going on here, and I have tried, to the best of my ability, to understand what’s happening, and something I have read, a Supreme Court Decision, Gideon vs. Wainwright: The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel, he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.’ ” (See Gideon v Wainwright, 372 US 335, 344-345.)
Nevertheless, the majority has concluded that a new trial is in order because “the trial court did not ascertain that the defendant appreciated the risks of self-representation.” (At p 20.) Yet, I know of no case in which such a clear articulation on the pitfalls of pro se representation has come from the lips of the defendant himself. The majority blithely "passes over this part of the record with the unfounded suggestion that there is no way of telling whether defendant understood the significance of what he was saying or whether he was merely “reading uncompre *25 hended language supplied to him by another.” (At p 22.) Such a view is not only highly speculative, but wholly unrealistic. The defendant’s recitation concerning the dangers of s*jlf-representation provides a far clearer indication of his personal appreciation of the particular risks involved than if the court had uttered the warnings and the defendant merely acknowledged his understanding by a simple “yes”.
Nor is there any possiblity that further dialogue between the court and the defendant concerning the dangers of self-representation would have altered defendant’s unyielding position concerning Carpenter’s assistance at trial. On numerous occasions throughout these proceedings, defendant made it clear that he would accept no attorney from the Public Defender’s office. Under the circumstances, further questioning by the trial court of the type suggested by the majority would have been futile. On this record, I can only conclude that defendant fully appreciated the danger of proceeding pro se and, despite the risks involved, refused the assistance of court-appointed counsel.
No constitutional rights will have been protected by ordering a new trial in this case. Rather, by sanctioning the type of gamesmanship practiced here, this court’s decision will only serve to further undermine public confidence in the criminal justice system. No defendant faced with the constitutionally permissible choice of either accepting competent, court-appointed counsel or proceeding pro se should be able to straddle both rights and, in so doing, frustrate the course of a criminal trial. As one court has aptly noted: “ ‘[W]e have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel. * * * [H]e may not use this right to play a “cat and mouse” game with the court * * * or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel.’” (Kates v Nelson, 435 F2d 1085, 1088-1089, quoting United States ex rel. Davis v McMann, 386 F2d 611, 618-619 [citations omitted].)
Having clearly and unequivocally rejected the only attorney to which he was constitutionally entitled, the sole *26 option that remained was for the defendant to represent himself. He should now be bound by that election. Instead, he is given an unwarranted, second opportunity to put the People to the task of establishing his guilt at trial, five years after the crime was committed. Since it is likely that defendant will not have any different or better counsel on the retrial than was available to him at the first trial, I fully agree with Justice Simons that “[n]either justice nor the appearance that justice has been done is satisfied by such a result.” (83 AD2d, at p 216.)
Chief Judge Cooke and Judges Jones and Meyer concur with Judge Fuchsberg; Judge Jasen dissents and votes to reverse in a separate opinion in which Judges Gabrielli and Wachtler concur.
Order affirmed.